IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Donald C. Bankhead, et al.,

                Plaintiffs,     Case No. 1:17-cv-04085

v.                                      Michael L. Brown
                                      United States District Judge

Castle Parking Solutions, et al.,

                Defendants.

_____/

## **OPINION AND ORDER**

Plaintiffs ask this Court to recuse itself from consideration of this matter and to stay all proceedings pending a ruling on recusal. (Dkt. 42). For the reasons set forth below, the Court denies Plaintiffs' motion.

### I. Background

Plaintiffs Bankhead and Thompson sued Defendants claiming they systematically disabled and "booted" cars in the City of Atlanta despite that signs they posted at booting locations did not comply with relevant city ordinances. *See* Dkt. 19. More specifically, Plaintiffs allege that Defendant Beacon Management Services, LLC (a property management company) directed Defendant Castle Parking Solutions LLC to boot or

immobilize vehicles on properties Defendant Beacon managed. *Id*. at ¶¶ 12-14. Since Defendant Beacon removed this case, Plaintiffs have filed a series of motions aimed at defeating diversity jurisdiction to send this case back to the state court from which it came. *See, e.g.*, Dkts. 20, 33. Plaintiffs, for example, alleged in the initial complaint that the defendants "have collected millions of dollars in fees" from the booting of vehicles in violation of Atlanta ordinances. Dkt. 1-1 at 3. Defendant Beacon cited this allegation in support of removal. Dkt. 1 at ¶ 30.

The very next day, Plaintiffs moved to amend their complaint to drop this allegation, claiming that they did not intend to include this allegation, did so "inadvertent[ly]", and have "no evidence" about the total fees Defendants collected. Dkt. 2 at ¶ 4. Plaintiffs also moved for jurisdictional discovery, arguing that "the amount in controversy may only be in the hundreds of thousands." Dkt. 3 at ¶ 8. The judge assigned to the case at that time denied the motion for discovery. He allowed Plaintiffs to amend the complaint but ruled that federal jurisdiction had been determined at the time of removal, so Plaintiffs could not defeat diversity jurisdiction through the proposed amendment. (Dkt. 18).

On the day they received that order, Plaintiffs moved to dismiss Defendant Beacon (the diverse defendant), claiming that they recently learned that Defendant Beacon did not, in fact, direct Defendant Castle to boot vehicles on properties Beacon managed.[1] (Dkt. 20). In their motion, Plaintiffs suggested that the homeowners association at the property where their cars had been booted might be the correct party to sue along with Defendant Castle. *Id.* Defendant Beacon opposed that motion, arguing that Plaintiffs were merely forum shopping – that is, trying to defeat jurisdiction so they could return to state court. (Dkt. 22). As part of this, Defendant Beacon showed that Plaintiffs were aware by at least October 2017 that the homeowners association – not Defendant Beacon – directed Defendant Castle in booting cars. *Id*. at 7, 18-19. Alternatively, Defendant Beacon argued that – if the Court were to grant Plaintiffs' motion to dismiss – the Court should award Defendant Beacon its attorneys' fees and costs in responding to Plaintiffs' motions aimed at defeating jurisdiction. *Id*. at 9-10.

---

[1] The Court entered the Order on Plaintiff's Motion to Amend on Friday, December 1, 2017. (Dkt. 20). The parties, however, received notification of the order on Monday, December 4, 2017. They moved to dismiss later that day. Dkt. 22 at 3.

At about that time, the case was transferred to the undersigned. The Court held a hearing on Plaintiffs' motion to dismiss and found that Plaintiffs had not shown their motion to dismiss was based on newly discovered information but rather sought to subvert the prior judge's ruling that Defendant Beacon had properly removed the case. Dkt. 34 at 42:9-45:6. The Court asked Defendant Beacon whether it would prefer to stay in federal court or to have the matter dismissed and obtain appropriate attorneys' fees. *Id.* at 46:1-10. Defense counsel asked for time to consult with their client. *Id.* at 46:1-3. But, immediately after the hearing, Plaintiffs withdrew their motion to avoid paying attorneys' fees. (Dkt. 30).

Things remained quiet for about three weeks. On April 10, 2018, Plaintiffs filed their Motion to Add Party and Remove Defendant Beacon based largely on the same facts Plaintiffs cited in their earlier motion to dismiss – that is, a claim that they had recently learned that the homeowners association rather than Defendant Beacon was responsible for directing Defendant Castle. *See* Dkt. 33. As explained above, Plaintiffs had been aware of this fact since at least October 2017. But now Plaintiffs alleged that they had – "[b]y chance" – recently spoken

4

with an attorney for the homeowners association who had admitted that the association directed Defendant Castle. *Id.* at ¶ 8. So Plaintiffs moved to dismiss Defendant Beacon from the case, to add the homeowners association, and to amend their complaint to allege claims against the association. *Id.* Plaintiffs neither included an affidavit to explain the newly discovered evidence nor attached a copy of the proposed amended complaint as required by the Local Rules. *Id.* They included an amended complaint and an affidavit (from Plaintiffs' counsel rather than the attorney for the homeowners association) with a reply brief. (Dkt. 36-3). That amended complaint shows that Plaintiffs are looking for a wholesale redrafting of their complaint, changing the scope of the putative class from a citywide class against Defendants Beacon and Castle for booting at properties all over Atlanta to a class against Defendant Castle and one homeowners association for booting at only one property. *See id.* Above all, Plaintiffs – having withdrawn their prior motion to dismiss – sought another avenue for defeating diversity jurisdiction by dismissing Defendant Beacon from this case.

While that motion was pending, Plaintiffs' counsel brought an unrelated lawsuit in Union City, Georgia. Neither the Plaintiffs nor

5

Defendants in this case are parties to the Union City matter. Plaintiffs in that case allege that the various companies in Union City booted vehicles at locations in Union City in violation of that city's ordinances. One of the defendants in the Union City case removed the case from state court to this Court. That case is now known as *Polson v. Kenny McElwaney, et al.*, Case No. 1:18-cv-2674 (N.D. Ga.).

The removing defendant checked a box on this Court's Civil Cover Sheet claiming *Polson* is related to the matter before this Court because they involve the "same issue of fact or arises out of the same event or transaction." (Dkt. 42-1). *Polson* thus was first assigned to this Court.

Plaintiffs' counsel called this Court's chambers to challenge the automatic assignment of *Polson* to it. Dkt. 48-1 at ¶ 6. While the Court believes that counsel asserted that the cases were mistakenly marked as related, Plaintiffs' counsel does not recall making that assessment. *Id.* at ¶ 11. He admits, however, that he called to ask how to "dispute" the removing defendant's "designation that the *Polson* case was sufficiently factually related" to this case so as to cause *Polson's* assignment to this court. *Id.* at ¶ 9. He wanted to know how to dispute the automatic assignment of *Polson* based on the defendant's designation that it

6

"involved the same issue of fact or arises out of the same event or transaction" as this case. *Id.*[2] He recalled stating that the two cases "involve[] different defendants, parking lots, and municipal ordinances." *Id.* at ¶ 10. He also stated that the Court should refuse to accept the *Polson* case because the removing defendant was represented by Alston & Bird, the firm at which the undersigned worked before joining the District Court and the firm at which his wife continues to work. *Id.* at ¶ 13.

Before receiving that call, this Court was unaware that *Polson* had been assigned to it. The Court immediately confirmed that Alston & Bird

---

[2] The Northern District of Georgia's standard operating procedure would have required this Court to confirm that the two cases met the standard for relatedness under the District Court's internal operating procedures. Plaintiff contends that the undersigned "performed" a "review of relatedness and made the determination that *Polson* and [this case] were sufficiently related such that *Polson* would not receive a random judge assignment." Dkt. 48-1 at 13. That is not correct. Neither the undersigned nor any other judge or member of the clerk's office ever made that assessment. The cases were initially marked as related based only on the representation by the removing attorney in the Civil Cover Sheet. Rather than making any such assessment, this Court recused itself. It is clear, however, that the cases do not meet with Court's internal requirements for "relatedness" as they do not involve the same set of facts. The Court's internal operating procedures state that cases are only treated as related if they involve "identical" facts rather than merely similar facts.

7

represented one of the defendants and, therefore, recused itself from the matter. *Polson*, Dkt. 18. The very next day, Plaintiffs moved to disqualify the Court from this case, arguing that the cases are so closely related – involving "nearly identical claims arising out of the same course of conduct" – that recusal is required. (Dkt. 42). That was, to say the least, a completely different position than Plaintiffs had taken just days before when challenging the assignment of *Polson* to this Court on relatedness grounds.

The Court held a telephonic hearing on the motion for recusal. (Dkt. 46). The next day, the Court held another telephonic hearing the next day to discuss the Court's concern about Plaintiff's counsel's repeated telephone calls to the Clerk's office about the assignment of *Polson*. (Dkt. 47). During the second hearing, the Court denied Plaintiff's motion for recusal. Dkt. 54 at 3:17-22. On June 18, 2018, Plaintiff filed a "Supplemental Brief in Support of Motion for Recusal or, in the Alternative, Motion for Reconsideration." (Dkt. 48). Although the Court denied Plaintiff's motion for recusal before the filing of Plaintiffs' "supplemental brief," the Court has considered the additional authority

8

sited therein. The Court files this Opinion to supplement its earlier explanation for the denial of Plaintiffs' motion to recuse.

## II. Discussion

Plaintiffs contend that the undersigned's recusal in *Polson* "triggers the Court's duty to recuse" here. *Id*. at 5. Plaintiffs state that because these two cases "involve nearly identical claims arising from the same course of conduct" and "overlapping counsel," "the attorneys in Polson have a substantial financial and professional interest in the subject matter of the Bankhead case such that recusal is appropriate." *Id*. at 7. Plaintiff argues, therefore, that the undersigned should recuse under 28 U.S.C. § 455(a).

Section 455(a) of Title 28 requires a judge to "disqualify himself [or herself] in any proceeding in which his [or her] impartiality might reasonably be questioned." "[T]he standard of review for a §455(a) motion is whether an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality." *United States v. Patti*, 337 F.3d 1317, 1321 (11th Cir. 2003) (internal quotations

and citations omitted). "[A]ny doubts must be resolved in favor of recusal." *Id.*

But "there is as much [an] obligation for a judge not to recuse when there is no occasion for him to do so as there is for him to do so when there is." *James v. Hunt*, Case No. 1:17-cv-1181, 2017 WL 4475945, at *1 (N.D. Ga. July 13, 2017) (quoting *United States v. Burger*, 964 F.2d 1065, 1070 (10th Cir. 1992)). "[A] judge, having been assigned to a case, should not recuse himself on unsupported, irrational, or highly tenuous speculation." *Id.* (quoting *United States v. Greenough*, 782 F.2d 1556, 1558 (11th Cir. 1986)). Put differently, "a judge has a duty to deny recusal when proper grounds for recusal have not been shown." *Federal Trade Comm'n v. Nat'l Urological Grp., Inc.*, Case No. 1:04-cv-3294, 2015 WL 13687740, at *3 (N.D. Ga. Oct. 27, 2015).

The objective lay observer standard endorsed by the Eleventh Circuit does not support recusal here for several reasons. First, neither plaintiff nor the defendants in *Polson* are parties in the matter before this Court. Any reasonable person, therefore, would know that this Court is not ruling on a matter in which an Alston & Bird client is involved. Indeed, any reasonable person would know that the Court acted to ensure

he did not preside over a matter involving an Alston & Bird client. Second, the matter before this Court involves conduct in Atlanta and allegations that the Defendants' signage violated Atlanta municipal ordinances. The *Polson* matter involves conduct in Union City and allegations that those defendants' signage violated that city's municipal ordinances. *Compare* Dkt 19 ("*Bankhead* Complaint") at ¶¶ 10-11, 25-28, 32, 49-52 *with Polson* Dkt. 7 ("*Polson* Complaint") at ¶¶ 1, 6-10, 22-24, 28, 36-39. A reasonable person, knowing all the facts and circumstances, would know the two matters involve different jurisdictions and ordinances. Third, the signs posted by the defendants in this case – according to the two complaints – are very different than the signs at issue in the *Polson* matter. *Compare Bankhead* Complaint, at ¶ 24 *with Polson* Complaint, at, ¶ 21. And the conduct in this case (booting at a private condominium) is different than the conduct at issue in *Polson* (booting at a shopping center open to all members of the public). A reasonable lay person, therefore, would know that two matters involve different facts. In short, the two matters involve different parties, different law, and different facts. And the Court recused from the matter

11

involving the Alston & Bird client. No reasonable person would doubt this Court's impartiality under these circumstances.

The most Plaintiffs can allege is that – at some level – both cases involve whether a plaintiff can recover against a company that boots vehicles in violation of a city ordinance. But again, the conduct, parties, and ordinances are completely different. A ruling by the Court in this matter will have no binding authority whatsoever on the *Polson* court. Likewise, this Court will not be bound by any ruling in the *Polson* case. Both cases will be decided based on the law, the pleadings, and the facts at issue in each. The mere fact that an Alston & Bird client faces allegations that are similar to the allegations at issue in this case, does not require recusal. Otherwise, the undersigned would be required to disqualify himself from any matter in which an Alston & Bird client may face a similar issue. The law does not require this.

The cases Plaintiffs cite in support of their assertion that a judge's recusal in one case may "trigger the Court's duty to recuse" in another are plainly distinguishable. Dkt. 42 at 5. Plaintiffs, for example, cite *Matter of Hatcher*, 150 F.3d 631 (7th Cir. 1998) in support of their claim that the Court's recusal in *Polson* requires recusal here. In that case, a

trial judge's son prosecuted a defendant. The judge attended portions of the trial to watch his son. The judge then refused to recuse himself from the prosecution of a different defendant charged as a co-conspirator to the individual his son had prosecuted. The government had not combined the prosecutions into a single action for its own internal reasons. But there was no doubt that the two defendants were coconspirators, even charged with possessing the same gun on the same day. *Id.* at 635. The court of appeals found that an "examination of the two indictments leaves no doubt that functionally the [separate indictments were] component parts of one large prosecution of the continuing criminal enterprise, conspiracy, and drug offenses." As a result, this court found that two matters presented "the rare case where the earlier proceedings were so closely related to the case now before the judge that recusal under § 455(a) was the only permissible option." *Id.* at 636.

This is not such a rare case. The parties in this case and the *Polson* case were not part of the same conspiracy or common conduct. The allegations in this mater involve signs at a private condominium in Atlanta and the legality of booting from that location under an Atlanta ordinance. The allegations in *Polson* involve completely different signs

13

displayed at a parking lot open to the public and the legality of booting under a Union City ordinance. They both include class action allegations. But the putative classes do not overlap in any way. That is exactly why Plaintiffs' counsel initially objected to the assignment of *Polson* to this Court as a related case and insisted they "involve[] different defendants, parking lots, and municipal ordinances." Dkt. 48-1 at ¶ 6.

Plaintiffs' reliance on *In re Aetna Casualty & Surety Co.*, 919 F.2d 1136 (6th Cir. 1990) is also misplaced. In that case, the FDIC filed seven cases against Aetna seeking to recover against Aetna on a bond it had issued to banks controlled by the same family. Each case involved the same exact legal issue, whether Aetna was liable to the FDIC under the specific bond. *Id.* at 1139. Indeed, the cases were so closely linked that Aetna sought to have them consolidated for trial. *Id.* The judge initially recused himself from presiding over any of the cases because his daughter worked with a law firm that represented the FDIC in four of the cases. *Id.* He later reconsidered his decision and sought to preside over the three cases in which his daughter's firm was not involved. *Id.* His only basis for changing his mind was the fact that the cases were languishing with no trial having been scheduled. *Id.* at 1143.

Aetna moved for his recusal and, when the trial judge refused, sought mandamus in the court of appeals. That court ordered his recusal. *Id.* In doing so, the court of appeals noted that the defendant (Aetna) and the plaintiff (the FDIC) in the cases before the judge, were the same parties in the cases involving his daughter's law firm.[3] The cases also involved the same bond provision, meaning that the FDIC's ability to recover against Aetna in all the cases involved an interpretation of the same bond provision. *Id.* at 1143. As a result, any decision by the judge in the three cases before him could have become law of the case or resulted in collateral estoppel in the cases involving his daughter's firm. *Id.*

Plaintiffs do not argue – nor could they – that any decision in *Bankhead* could create law of the case in *Polson*, or that a decision in *Bankhead* could support collateral estoppel in *Polson*. There are no overlapping parties, facts, contracts, or law. At most, a decision in this case could be cited as authority on the Polson matter or vice versa. As explained above, to require recusal under these facts, would require this

---

[3] The judge's daughter resigned from the firm during the pendency of the dispute. So the issue on appeal was whether orders he entered before her resignation had to be vacated.

Court to recuse itself whenever a decision it might render could be cited as authority in any matter involving an Alston & Bird client. Neither *Hatcher*, *Aetna,* nor any other case extend § 455(a) that far.[4]

For the reasons set forth above, the Court **DENIES** Plaintiffs' Motion for Recusal (Dkt. 42).

**IT IS SO ORDERED.**

Dated: July 27, 2018
Atlanta, Georgia

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE

---

[4] Plaintiffs also cited *Gordon v. Reliant Energy, Inc.*, 141 F. Supp. 2d 1041 (S.D. Cal. 2001). But, in that case, the judge recused himself from two class actions in which he, his family members, and his staff would have been members of the class but for a provision of the class definition excluding them. *Gordon,* 141 F. Supp. 2d at 1043-44. The judge found that despite the exclusionary language, he, his family, and his staff would still retain an "underlying interest" in the outcome of the very litigation before him. *Id*. at 1043. This case involves no such situation.